COURT OF APPEALS
DECISION
DATED AND FILED

**November 17, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1262**

Cir. Ct. No. **2018ME148**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF A.R.F.:

PORTAGE COUNTY,

   PETITIONER-RESPONDENT,

  V.

A.R.F.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Portage County: THOMAS T. FLUGAUR, Judge. *Affirmed*.

¶1    GRAHAM, J.[1] Ashley[2] appeals a WIS. STAT. ch. 51 order for involuntary commitment, as well as an order for involuntary medication and treatment. She argues that the orders must be reversed because the circuit court did not make "specific factual findings with reference to the [dangerousness] subdivision paragraph of § 51.20(1)(a)2. on which [Ashley's] recommitment is based," as required by ***Langlade Cnty. v. D.J.W.***, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. I conclude that the circuit court made all the findings that are required by § 51.20 and ***D.J.W.***, and therefore, I affirm.

¶2    In March 2022, Ashley was subject to an existing mental health commitment order and an existing involuntary medication order, both of which were set to expire in April 2022. Portage County timely petitioned the circuit court to extend Ashley's commitment for 12 months.

¶3    Under WIS. STAT. § 51.20, a person may be involuntarily committed for treatment if the county submitting the petition proves that the person is mentally ill, a proper subject of treatment, and currently dangerous to themselves or others under one of the statutory dangerousness standards set forth in § 51.20(1)(a)2. Each of the dangerousness standards requires evidence of recent acts or omissions. *See* § 51.20(1)(a)2.a.-e.

¶4    Additionally, a person who is subject to an existing commitment may be recommitted for up to 12 months if the same three criteria are met. ***D.J.W.***, 391 Wis. 2d 231, ¶31. However, in a recommitment proceeding, proof of current

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

[2] To maintain the confidentiality of the identity of the petitioner-respondent, we use a pseudonym chosen by the parties.

dangerousness under any of the dangerousness standards may take a somewhat different form than it would take in an initial commitment proceeding. *See* WIS. STAT. § 51.20(1)(am). Under § 51.20(1)(am), in lieu of proving recent acts or omissions evidencing dangerousness, proof of dangerousness can be made through a different "evidentiary pathway"—by showing "'a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.'" *D.J.W.*, 391 Wis. 2d 231, ¶32 (quoting § 51.20(1)(am)). Two years ago in *D.J.W.*, our supreme court clarified that when a circuit court recommits a person based on the language of § 51.20(1)(am), the court must "make specific factual findings with reference to the [dangerousness] subdivision paragraph of … § 51.20(1)(a)2., on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶3; *see also id.*, ¶¶40-44.

¶5 In this case, the County's recommitment petition alleged that there was a substantial likelihood that Ashley would be a proper subject for commitment if treatment were withdrawn. According to the County, she was dangerous because she would "discontinue treatment against medical advice" and has a "history of becoming dangerous [when she is not taking prescribed medications] due to impaired judgment." The County also submitted the written report of Ashley's treating physician, Dr. Wagdy Khalil. In his report, Dr. Khalil stated that Ashley had been under his care "for approximately 2+ years." He opined that she has severe schizoaffective disorder, bipolar type and other specified anxiety disorder, that she experiences auditory hallucinations and paranoid delusions, and that she "is known to be not compliant with her medications that lead[s] to quick deterioration and require[s] immediate admission to inpatient psychiatric hospitals." Dr. Khalil

3

opined that Ashley was dangerous under WIS. STAT. § 51.20(1)(a)2.c.[3] and § 51.20(1)(a)2.d.,[4] (sometimes referred to as the third and fourth standards), and that, consistent with § 51.20(1)(am), "there is a substantial likelihood that [Ashley] would become a proper subject for commitment under [those] standard[s] if treatment were withdrawn."

¶6      The circuit court held a recommitment hearing, at which the County presented Dr. Khalil as its sole witness. Dr. Khalil gave testimony that was consistent with his written report. He testified that, among other things, Ashley lived in a group home where she received outpatient treatment. He further testified that Ashley told him she would quit taking all of her medication if the commitment were to end, and that refusal to take prescribed medication was consistent with her history. As Dr. Khalil explained, when, in the past, her commitment "was canceled or left to expire, … she immediately stopped taking the medication and relapsed and she required hospitalization with a longer stay to re-stabilize her." Dr. Khalil described an incident that occurred a year prior to the recommitment hearing, in which she attacked her father as a result of a paranoid delusion. He also described more recent incidents in which Ashley's hallucinations and delusions led her to

---

[3] As discussed below, the third standard, WIS. STAT. §§ 51.20(1)(a)2.c., provides that dangerousness may be proven if the person "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."

[4] The fourth standard, WIS. STAT. § 51.20(1)(a)2.d., provides that dangerousness may be proven if the person:

> [e]vidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

falsely believe that she was being abused by her caregivers. According to Dr. Khalil, Ashley "still suffers from paranoid delusions" which impair her judgment, but they are "better because of the medication."

¶7     The circuit court determined that the County had satisfied its burden of proof, and it recommitted Ashley for a period of 12 months. In issuing its oral ruling, the court made the following findings based on Dr. Khalil's testimony and report, which had been received into evidence. The court found that Ashley is mentally ill and experiences paranoid delusions. Further, Ashley has a "history of noncompliance" when "not under a court order regarding taking medication," and that, "[w]hen she doesn't take medication, she decompensates, quickly relapses, and gets into acute psychosis and paranoid behavior." Based on Dr. Khalil's testimony and Ashely's "own words to [Dr. Khalil] which … haven't been refuted," the court found that, "if she's not under a commitment, she's going to stop taking her medication." Additionally, the court found that, "[i]f treatment were withdrawn, there's a substantial probability of physical impairment or injury to herself or others due to that impairment." The court then clarified that it was "referring back to" the third dangerousness standard, WIS. STAT. § 51.20(1)(a)2.c.,[5] "in terms of if treatment were withdrawn and that prong of the statutes becoming effective."

¶8     After determining that the County satisfied its burden of proof, the circuit court further ordered that Ashley be treated in "the least restrictive [setting]," which was "continued outpatient treatment at [the] facility she's currently in." However, continued treatment at the outpatient facility would be subject to conditions, including that Ashley "take all prescribed medications" and "keep all

---

[5] In its oral decision, the circuit court referred to the applicable statute as WIS. STAT. § 51.20(1)(c). The parties agree that the court misspoke and that, consistent with its written decision, the court had intended to refer to § 51.20(1)(a)2.c.

appointments with the psychiatrist and counselors involved in treatment recommendations." Ashley could be transferred to inpatient treatment if she violated those conditions.

¶9 The circuit court memorialized its decision in a standard form order, which contains checkboxes and was adopted by the Wisconsin Judicial Conference.[6] On the form order, the court checked a box finding that Ashley is dangerous because there is "a substantial probability of physical impairment or injury to … herself or other individuals due to impaired judgment." (That checkbox corresponds with the third dangerousness standard set forth in WIS. STAT. § 51.20(1)(a)2.c.) The court also checked a box finding that dangerousness was manifested by "a substantial likelihood, based on [Ashley's] treatment record, that [Ashley] would be a proper subject for commitment if treatment were withdrawn." (That checkbox corresponds with the evidentiary pathway set forth in § 51.20(1)(am).)[7]

¶10 Ashley appeals. She argues that the commitment order must be reversed because the circuit court failed to satisfy *D.J.W.*'s requirement of "specific factual findings with reference to the [dangerousness] subdivision paragraph of WIS. STAT. § 51.20(1)(a)2., on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶3. Ashley acknowledges that the circuit court identified the third standard, § 51.20(1)(a)2.c., as the dangerousness subdivision paragraph under which it based

---

[6] *See* Wisconsin Circuit Court Form ME-911, Order of Commitment/Extension of Commitment/Dismissal; *see also* WIS. STAT. § 758.18 (providing that the Judicial Conference "shall adopt standard court forms for use by parties and court officials in all civil and criminal actions and proceedings in the circuit court").

[7] At the same time the circuit court entered the recommitment order, it also entered an order for involuntary treatment and medication. As Ashley explains, if I were to reverse the involuntary commitment order, the involuntary treatment and medication order would also be reversed. However, Ashley does not challenge the involuntary treatment and medication order on any basis that is independent of her challenge to the involuntary commitment order, and therefore, I discuss it no further.

the recommitment, and she does not challenge the sufficiency of the evidence to commit her under that standard as modified by § 51.20(1)(am). However, she argues that *D.J.W.* requires more than identifying the dangerousness subdivision paragraph on which the recommitment is based. She contends that the circuit court was also required to make "specific factual findings" when determining that the third dangerousness standard was satisfied.

¶11 For reasons I now explain, I conclude that Ashley has not identified any deficiency in the circuit court's findings.

¶12 The problem addressed in *D.J.W.* was a then-common failure by circuit courts in recommitment proceedings to identify which of the five dangerousness standards under which the person would be a proper subject for commitment if treatment were withdrawn. In *D.J.W.*, for example, the circuit court had concluded that D.J.W. would be "a danger to himself" if treatment were withdrawn, but the court did not tie its ruling to any of the five dangerousness standards. *D.J.W.*, 391 Wis. 2d 231, ¶19. As a result of this lack of specificity, our supreme court "received conflicting messages from the [c]ounty and the court of appeals regarding the statutory basis for [D.J.W.'s] commitment," *id.*, ¶40, and the applicable standard had become "somewhat of a moving target" on appeal, *id.*, ¶36. Accordingly, the record was "quite unhelpful in guiding [the supreme] court's analysis" of D.J.W.'s challenge to the sufficiency of the evidence to support his recommitment. *Id.*, ¶40.

¶13 The *D.J.W.* court reiterated that a determination of "*current* dangerousness" is always required, even in recommitment proceedings in which the committed person is receiving treatment and WIS. STAT. § 51.20(1)(am) is used to prove dangerousness. *D.J.W.*, 391 Wis. 2d 231, ¶34. In such cases, the evidentiary

pathway set forth in § 51.20(1)(am) does not require proof of "recent overt acts or omissions demonstrating dangerousness" because the existing treatment may "ameliorat[e] such behavior." *Id.*, ¶33. Nevertheless, a recommitment must still be based on proof that at least one of the five dangerousness standards is satisfied because the individual would be a proper subject for commitment under that standard if treatment were withdrawn. *Id.*, ¶33.

¶14 It was in that context that the *D.J.W.* court issued the directive upon which Ashley's argument is based. The court directed that, "to avoid this problem in the future, … circuit courts in recommitment proceedings are to make specific factual findings with reference to the [dangerousness] subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." *Id.*, ¶40. As the court explained, this requirement would further two interrelated goals. It would protect the liberty interests of patients by ensuring that recommitments are based on evidence sufficient to satisfy at least one of the dangerousness standards. *Id.*, ¶¶42-43. And it would "clarify issues raised on appeal," which would "ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence." *Id.*, ¶44.

¶15 The problem that bedeviled the *D.J.W.* court is not present in this case. Here, as discussed, the circuit court expressly identified WIS. STAT. § 51.20(1)(a)2.c. as the applicable dangerousness standard. Under that standard, a person is dangerous if the person "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." *See* § 51.20(1)(a)2.c. And, because Ashley was receiving treatment under an existing commitment order, the County could satisfy the requirement of proving "a pattern of recent acts or omission" by proving "a substantial likelihood,

8

based on the subject individual's treatment record, that the individual would be a proper subject for commitment [under § 51.20(1)(a)2.c.] if treatment were withdrawn." *See* § 51.20(1)(am).

¶16 In explaining its decision under WIS. STAT. § 51.20(1)(a)2.c. as modified by § 51.20(1)(am), the circuit court found that Ashley was dangerous because, based on her treatment history, she would discontinue her medication and would "decompensate[], quickly relapse[]," and experience "acute psychosis and paranoid behavior" if treatment were withdrawn. The court appeared to credit Dr. Khalil's testimony about a prior incident in which she attacked her father as a result of delusional thinking, and his testimony that her delusions continued, despite treatment. Based on this history, the court found that, if treatment were withdrawn, there would be "a substantial probability of physical impairment or injury to herself or others due to that impairment," and accordingly that Ashley would be a proper subject for commitment. As such, the circuit court's findings were tied to the elements set forth in § 51.20(1)(a)2.c. as modified by § 51.20(1)(am). And, as stated above, Ashley does not challenge the sufficiency of the evidence supporting the dangerousness standard set forth in § 51.20(1)(a)2.c. as modified by (1)(am).

¶17 Nor does Ashley persuade me that any additional "specific factual findings" were required under *D.J.W*. She relies on *Shawano Cnty. v. S.L.V.*, No. 2021AP223, unpublished slip op. (WI App Aug. 17, 2021), a one-judge authored opinion that can be cited for persuasive value under WIS. STAT. RULE 809.23(3)(b). However, her reliance on that case is unavailing. In *S.L.V.*, the court of appeals reversed a commitment order because the circuit court "did not specify under which subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. it found [S.L.V.] to be dangerous," nor did it "make specific factual findings corresponding to the elements of any of the five statutory standards of dangerousness set forth in

§ 51.20(1)(a)2." ***Id.***, ¶18.  Here, by contrast, the circuit court expressly identified the applicable subdivision as § 51.20(1)(a)2.c, and it made findings tied to the elements of that subdivision.  Nothing further was required.

¶18    Accordingly, I affirm the circuit court's orders.

*By the Court.—*Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.